## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JUSTINE DAILY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:14-cv-00550-HE** |
| | ) | |
| **USAA CASUALTY INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## USAA CASUALTY INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT & OPENING BRIEF IN SUPPORT

---

William S. Leach, OBA # 14892
Jodi W. Dishman, OBA # 20677
Andrew J. Morris, OBA # 31658
McAfee & Taft A Professional Corporation
211 North Robinson, 10th Floor
Oklahoma City, OK 73102
Telephone:   (405) 235-9621
Facsimile:   (405) 235-0439
E-mail:      bill.leach@mcafeetaft.com
             jodi.dishman@mcafeetaft.com
             andrew.morris@mcafeetaft.com

ATTORNEYS FOR DEFENDANT USAA
CASUALTY INSURANCE COMPANY

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

UNDISPUTED MATERIAL FACTS .................................................................... 5

A.   The Policy is Plaintiff's contract with USAA CIC, requiring Plaintiff
     cooperate in USAA CIC's investigation ................................................. 5

B.   Plaintiff claimed damage following the May 20, 2013 tornado; USAA CIC
     promptly investigated and paid Plaintiff's claim on the date requested ................. 6

C.   Plaintiff claimed additional damages, and USAA CIC promptly retained an
     independent engineer to determine causation ......................................... 7

D.   Plaintiff failed to cooperate with USAA CIC, but USAA CIC nonetheless
     made a supplemental payment to her ...................................................... 8

E.   After USAA CIC's supplemental payment, the claim went quiet except for
     a living expense payment request ........................................................... 11

F.   Plaintiff abandoned her breach of contract claim .................................... 12

G.   Plaintiff knew USAA CIC requested to inspect her home in October 2014,
     and she altered the property anyway ...................................................... 12

H.   USAA CIC has paid Plaintiff more than $50,000.00 on her claim ...................... 14

STANDARD OF REVIEW ................................................................................... 15

ARGUMENTS & AUTHORITIES ....................................................................... 15

I.   USAA CIC is entitled to summary judgment on Plaintiff's bad faith claim ......... 15

     A.   Plaintiff cannot show USAA CIC unreasonably delayed or
          Denied payment of undisputed amounts due to Plaintiff ......................... 16

          1.   USAA CIC timely paid amounts due or was not required
               To do so under the Policy ........................................................ 16

          2.   USAA CIC conducted reasonable investigations ............................ 19

          3.   USAA CIC's reliance on an independent engineer

        to assess structural damage was reasonable ................................... 20

B.      Plaintiff cannot satisfy the other elements of her bad faith claim .............. 22

II.    USAA CIC is entitled to summary judgment on Plaintiff's breach of
contract claim ......................................................................................... 23

A.      Plaintiff abandoned her breach of contract claim........................................ 23

B.      Plaintiff cannot assert a contract claim because she failed to
cooperate with USAA CIC in its investigative efforts ................................. 25

C.      Plaintiff's irreparable spoliation necessitates dismissal ............................ 27

III.   There is no basis for Plaintiff to recover punitive damages ................................... 30

CONCLUSION ............................................................................................. 30

## TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................ 15

*Ball Wilshire Ins. Co.*,
  221 P.3d 717 (Okla. 2009) ............................................................. 16

*Bannister v. State Farm Mut. Auto. Ins. Co.*,
  692 F.3d 1117 (10th Cir. 2012) ...................................................... 25

*Bryant v. Sagamore Insurance Co.*,
  597 F. App'x 968 (10th Cir. 2015).............................................. 26, 27

*Burlington N. & Santa Fe Ry. v. Grant*,
  505 F.3d 1013 (10th Cir. 2007) ...................................................... 28

*Buzzard v. Farmers Ins. Co., Inc.*,
  824 P.2d 1105 (Okla. 1991) ............................................................ 30

*Chapman v. BOK Fin. Corp.*,
  No. 12-CV-613-GKF-PJ, 2014 WL 3548844
  (N.D. Okla. July 17, 2014) .............................................................. 27

*Christian v. Am. Home Assurance Co.*,
  577 P.2d 899 (Okla. 1978) .............................................................. 21

*Cole v. Shelter Mut. Ins. Co.*,
  No. CIV-13-1178-M, 2014 WL 5018591 (W.D. Okla. Oct. 7, 2014) .................. 21

*Davis v. GHS Health Maint. Org., Inc.*,
  2001 OK 3, 22 P.3d 1204 ................................................................ 25

*Davis v. TXO Prod. Corp.*,
  929 F.2d 1515 (10th Cir. 1991) .................................................. 23, 24

*Ehrenhaus v. Reynolds*,
  965 F.2d 916 (10th Cir. 1992) ........................................................ 28

*Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*,
  No. CIV-11-594-D, 2012 WL 3595093 (W.D. Okla. Aug. 21, 2012) ....... 15, 16, 22

*Enderwood v. Sinclair Broad. Grp., Inc.*,
    233 F. App'x 793 (10th Cir. 2007) ........................................................................ 23

*Errahmouni v. Progressive N. Ins. Co.*, 2013 WL 6410985,
    No. CIV-12-1380-HE
    (W.D. Okla. Dec. 9, 2013) ................................................................................ 19

*Estate of Trentadue ex rel. Aguilar v. United States*,
    397 F.3d 840 (10th Cir. 2005) ........................................................................ 28

*Evans v. Liberty Nat. Life Ins. Co.*,
    13-CV-390-CVE-PJC, 2015 WL 1650192
    (N.D. Okla. 2015) ................................................................................ 22, 23

*First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*,
    928 P.2d 298 (Okla. 1996) .............................................................................. 25, 26

*Hartsfield v. Farmers Ins. Co.*,
    No. CIV-10-585-C, 2011 WL 2680840 (W.D. Okla. July 8, 2011) ...................... 20

*JT Carneal v. Travelers Ins. of Am.*,
    No. 5:12-CV-00174, 2013 WL 5945071 (W.D. Ky. Nov. 5, 2013) ...................... 20

*LeBlanc v. Travelers Home & Marine Ins. Co.*,
    No. CIV-10-503-HE, 2011 WL 2748616 (W.D. Okla. July 13, 2011) ................. 20

*Lopez v. Farmers Ins. Co.*,
    No. CIV-10-0584-HE, 2011 WL 1807158 (W.D. Okla. May 6, 2011) ................ 20

*McNamus v. State Farm Lloyds*,
    2004 WL 2533558 (N.D. Tex. Nov. 8, 2004) ...................................................... 21

*Oldenkamp v. United Am. Ins. Co.*,
    619 F.3d 1243 (10th Cir. 2010) .......................................................................... 25

*Oldenkamp v. United Am. Ins. Co.*,
    No. 07-CV-601-TCK-PJC, 2008 WL 4682226
    (N.D. Okla. Oct. 21, 2008) .............................................................................. 27

*Scrutchins v. Div. of Youth & Family Servs.*,
    No. 5-925 (CRS), 2008 WL 474103
    (D.N.J. Feb. 15, 2008) .............................................................................. 24, 25

*Simpson v. Univ. of Colo. Boulder*,
　　500 F.3d 1170 (10th Cir. 2007) ................................................................ 15

*Skinner v. John Deere Ins. Co.*,
　　2000 OK 18, 998 P.2d 1219 ...................................................................... 19

*Turner v. Pub. Serv. Co. of Colo.*,
　　563 F.3d 1136 (10th Cir. 2009) .......................................................... 27, 28

*United States v. Vann*,
　　776 F.3d 746 (10th Cir. 2015) ................................................................ 24

*Yoder v. Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
　　774 F.3d 1065 (6th Cir. 2014) ................................................................ 28

## OTHER AUTHORITIES

Fed. R. Civ. P. 30(e) .................................................................................... 24

Fed. R. Civ. P. 56......................................................................................... 15

Okla. Stat. tit. 23, §§ 9.1§ 9.1 .................................................................... 30

Oklahoma Uniform Jury Instructions-Civil (2d) No. 22.2 ............................ 16

Defendant USAA CIC Casualty Insurance Company ("USAA CIC") moves the Court for summary judgment on Plaintiff's claims and submits the following brief.

## INTRODUCTION

This case asks whether an insurer that pays a claim within a month of the loss, re-adjusts the claim when new information comes to light, and continues to carry out its obligations even when the insured stops cooperating, is liable for bad faith and breach of contract. The answer is no as a matter of law.

In May 2013, a tornado in Moore, Oklahoma damaged Plaintiff's house. Although Plaintiff was in basic training at the time, USAA CIC worked with Plaintiff's parents and husband to evaluate the damage. Within days of receiving notice, USAA CIC sent an adjuster to evaluate the property. Less than a month after receiving notice, and pursuant to instructions from Plaintiff's mother, USAA CIC paid Plaintiff for damages, and advised her that the claim could be readjusted if supplemental damages appeared.

When Plaintiff subsequently contacted USAA CIC and claimed additional damages, USAA CIC promptly dispatched another adjuster. That adjuster suggested hiring an  engineer to evaluate Plaintiff's concerns. USAA CIC assigned an engineer who examined the additional damages and ultimately concluded that some occurred from the storm and some did not.

Then, for over two months and after retaining counsel Plaintiff ignored repeated requests for an inspection so USAA CIC could complete its adjustment and make a supplemental payment. When USAA CIC was finally allowed to examine Plaintiff's

1

house, the adjuster had a few follow-up questions, which he was required to submit to Plaintiff through her counsel.  Those questions remain unanswered.  However, rather than waiting for Plaintiff and her counsel to respond and despite the non-cooperation, USAA CIC made a supplemental payment based on the known information.

The claim then went silent—except for one request for additional living expense payment by Plaintiff's counsel in February 2014—until Plaintiff filed this lawsuit in May 2014.  In October 2014, USAA CIC received the first substantive correspondence on the claim since February 2014, in which Plaintiff's counsel submitted various documents and requested that they be forwarded to an adjuster.  USAA CIC quickly asked for the Chris Ramseyer report referenced in these documents and asked to inspect the property to evaluate any newly claimed damages.

With litigation and formal requests for an inspection pending, Plaintiff gutted her residence and removed virtually any trace of its pre-remodeled condition.  Plaintiff destroyed the key evidence in the case even though she admits she knew that USAA CIC had formally requested an opportunity for its experts and adjuster to inspect the clamed new damage.  Plaintiff, through counsel, canceled an inspection at the last minute and lodged baseless objections to stonewall the inspection, providing the opportunity for the subsequent demolition of the evidence.  As this Court is aware (*see* ECF Nos. 33-35), USAA CIC ultimately had to move to compel an inspection before Plaintiff's counsel would agree to it.  By the time USAA CIC obtained access to the house  in January 2015, it had been gutted.  The brick was torn off and discarded, the sheet rock was torn off, disposed of and not replaced, and new electrical and  plumbing was accomplished, and

foundation repairs were undertaken.  In other words, no evidence of the issues that Plaintiff had asked USAA CIC to consider and evaluate in October 2014 after she filed this lawsuit and that are now at issue in the lawsuit remained.  The Court also will recall that Plaintiff escaped a 12(b)(6) dismissal by alleging USAA CIC delayed in paying to replace her roof.  *See* ECF Nos. 27, 30-32, and 38.  Discovery has now proven those allegations to be false.  Payment was made on Plaintiff's roof in June 2013, and it was Plaintiff, not USAA CIC, who made the decision to wait to replace the roof until January 2014.

The evidence does not reveal any conduct by USAA CIC that constitutes bad faith or that any reasonable jury could view as bad faith.  Plaintiffs have come nowhere near proving what they said they would to survive dismissal of this lawsuit, and instead have made multiple allegations that have proved to be false or have no evidentiary support. There is no evidence of biased engineers, no evidence of policies or procedures designed to underpay or deny claims, and no evidence of bad intent toward or sharp treatment of Plaintiff by any USAA CIC employee.  There is no evidence of an outcome-oriented investigation by USAA CIC.  There certainly is evidence of investigatory stonewalling— but by Plaintiff or her representatives, not by USAA CIC.

Plaintiff undoubtedly will attempt to magnify insignificant quibbles and nitpick USAA CIC's claims handling in hindsight in an effort to survive to trial.  USAA respectfully submits that the Court should not lose sight of what bad faith is—an insurer formulating an unreasonable basis for denying or delaying payment that is due the

insured.  Here, the evidence demonstrates that none of USAA CIC's actions constitutes bad faith as a matter of law.

Summary judgment also is justified because of Plaintiff's, or her representatives, post-litigation spoliation.  This deliberate and knowing spoliation is significant for two reasons.  First, it justifies "death penalty" sanctions and dismissal of Plaintiff's lawsuit. It is difficult to imagine a clearer example of evidence destruction given the circumstances where Plaintiff sues USAA CIC for bad faith and then asks USAA CIC to evaluate additional claims of damage under the Policy.  This is no different from a situation where a litigant deliberately shreds key documents, with discovery requests for the documents pending, in order to hide damning evidence.  Second, Plaintiff's actions violate her insurance agreement with USAA CIC, which expressly requires both cooperation and access to  the damaged property as often as USAA CIC reasonably requests.  These are contractual conditions to recovery, and Plaintiff or her representatives violated those conditions.

Finally, in addition to her failure to cooperate and spoliation of evidence, Plaintiff's breach of contract claim fails because she abandoned it.  Plaintiff initially dropped the breach of contract claim when she filed her second amended complaint. Plaintiff then testified under oath that she is not asserting a breach of contract claim. Plaintiff made the same statement in refusing to respond to a request for production, a response that has not been supplemented.  Although the Court allowed Plaintiff to amend her complaint a third time, her sworn testimony and statements in response to discovery

control.  Accordingly, the Court also should grant USAA CIC summary judgment on the

contract claim.

## UNDISPUTED MATERIAL FACTS[1]

**I.     The Policy is Plaintiff's contract with USAA CIC, requiring Plaintiff to cooperate in USAA CIC's investigation.**

1.     USAA CIC issued homeowner's policy number 020530046 90A to Plaintiff

for the period December 16, 2012, to December 16, 2013 (the "Policy").  Ex. 1, Policy, at

USAA-330.

2.     The Policy requires Plaintiff to cooperate with USAA CIC in the

investigation of a claim.  Ex. 1, Policy § I(2)(e) ("In case of a loss to which this insurance

may apply you must . . . [c]ooperate with us in the investigation of a claim . . . ."), at

USAA-363.

3.     Plaintiff also has a duty to protect the property from further damage, make

reasonable and necessary repairs to protect the property, and keep an accurate record of

repair expenses.  Ex. 1, Policy § I(2)(d), at USAA-363.

4.     Further, "as often as [USAA CIC] reasonably require[s]" Plaintiff must

show the damaged property and provide USAA CIC with any records and documents

requested.  Ex. 1, Policy § I(2)(g), at USAA-363.

5.     Policy compliance is a condition of Plaintiff filing suit against USAA CIC.

Ex. 1, Policy § I(8), at USAA-365.

---

[1] Referred to as "UMF."

6.    In addition, to receive payment for "increased costs which are required . . . to comply with any ordinance or law governing . . . rebuilding, repair or demolition," Plaintiff must "actually incur" the cost.  Ex. 1, Policy § 14, at USAA-354.

**J.    Plaintiff claimed damages following the May 20, 2013 tornado; USAA CIC promptly investigated and paid Plaintiff's claim on the date requested.**

7.    On May 20, 2013, Plaintiff's house incurred damage from a tornado.  Ex. 2, James Elder Dep. 93:11-94:3, Mar. 18, 2015.

8.    A claim was reported to USAA CIC on May 21, 2013, arising from storm damage to Plaintiff's property.   Ex. 3, Review Documentation Log (Doc. No. 1), at USAA-2230.

9.    On May 29, 2013, USAA CIC sent independent adjuster Josh Bruce, with Allcat Claims Service ("Allcat"), to inspect the property with Plaintiff's husband and mother.  *See* Ex. 4, Bruce Photographs (May 29, 2013), at USAA-471 to -510; Ex. 5, Bruce Estimate, at USAA-1311 ("Date Inspected: 5/29/2013").

10.    During his inspection, Mr. Bruce photographed and documented damages, including total replacement of the roof.  *See* Ex. 4, Bruce Photographs (May 29, 2013), at USAA-471 to -510; Ex. 5, Bruce Estimate, USAA-1311 to -1329.

11.    At the time, Plaintiff was in basic training in Fort Jackson, South Carolina. Ex. 6, Pl. Dep. 24:13-16, 37:6-10, 91:25-92:5, Jan. 22, 2015.

12.    Plaintiff requested her mother ask USAA CIC to delay payment until Plaintiff returned home.  Ex. 7, Rochelle Elder Dep. 98:10-13, 98:24-99:10, 103:23-104:9, Mar. 18, 2015.

13.     Thus, on June 6, 2013, Plaintiff's mother requested payments be held by USAA CIC until after June 13, 2013, when Plaintiff was to return home.  Ex. 7, Rochelle Elder Dep. 87:1-89:14.

14.     On June 14, 2013, less than a month after the storm, USAA CIC made two payments totaling $21,648.22 to Plaintiff, based on Mr. Bruce's estimate, which amount was net of the deductible and recoverable depreciation.  Ex. 8, Checks, at USAA-2273 to -2274.

15.     USAA CIC's payment to Plaintiff included funds for, among other items, roof replacement and debris removal.  *See* Ex. 5, Bruce Estimate, at USAA-1316 (showing line items for roof removal and replacement); *id.* at USAA-1316 ("Note – The roofing price per square for tear off includes debris removal/haul off"); *id.* at USAA-1317 (showing dumpster load "[a]llowed for all damaged non roofing items").

**K.     Plaintiff claimed additional damages, and USAA CIC promptly retained an independent engineer to determine causation.**

16.     On June 21, 2013, Plaintiff claimed additional damages from the storm. Ex. 3, Review Documentation Log (Doc. No. 59), at USAA-2239.

17.     The independent adjuster who evaluated the newly-claimed damage recommended USAA CIC retain an engineer to evaluate claimed structural damages.  Ex. 3, Review Documentation Log (Doc. No. 76), at USAA-2241.

18.     On July 11, 2013, an engineer retained by USAA CIC inspected Plaintiff's house.  *See* Ex. 9, Rimkus Report of Findings, at USAA-1058.

19.    The engineer found no structural damage.   Ex. 9, Rimkus Report of Findings, at USAA-1053 ("No structural damage was noted to the residence.").

20.    USAA CIC requested an addendum to the Rimkus report, to include a recommendation for repairs and for scope of the damaged areas directly related to the wind/tornado.  Ex. 10, E-mails from USAA CIC to Rimkus, at USAA-1197 to -1199.

21.    USAA CIC also asked Rimkus to clarify if the foundation damage was related to the wind/tornado.  Ex. 10, E-mails from USAA CIC to Rimkus, at USAA-1197 to -1199.

22.    On July 24, 2013, Rimkus issued a supplemental report, determining: "We noted in our July 23, 2013, report that cracks and separations in the concrete foundation stem walls were a result of long-term differential foundation movement and concrete shrinkage during curing.  Therefore, we conclude that the May 20, 2013, tornado did not affect or damage the foundation at the Daily residence."  Ex. 11, Rimkus Supplemental Report of Findings, at USAA-1242.

**L.    Plaintiff failed to cooperate with USAA CIC, but USAA CIC nonetheless made a supplemental payment to her.**

23.    On August 2, 2013, Plaintiff signed an authorization to release information with Mr. Marr's law firm.  Ex. 12, Pl.'s Authorization, at USAA-1262.

24.    Plaintiff's counsel did not advise USAA CIC until 11 days later, on August 13, 2013, that Plaintiff had retained him to represent her.  Ex. 13, Letter from Jeff D. Marr to Caroline Gonzalez (Aug. 13, 2013), at USAA-1261.

25.     Plaintiff understood that when she hired counsel, USAA CIC's communications would go through her counsel.  *See* Ex. 6, Pl. Dep. 336:17-337:6.

26.     Plaintiff and her counsel did not respond to USAA CIC's repeated attempts—on August 20, August 22, August 28, September 9, September 12, and September 19, 2013—to set a reinspection appointment to complete the adjustment and make a supplemental payment and to address the damages determined by Rimkus.  Ex. 3, Review Documentation Log (Doc. Nos. 128, 132, 136, 140, 141, 144), at USAA-2255 to -2258; Ex. 14, E-mail from Gloria Ralston to Trisha Parent (Aug. 20, 2013, 10:59 AM), at USAA-1268 to -1269.

27.     On October 2, 2014, Plaintiff agreed to permit reinspection on October 14, 2014, but then postponed that inspection.  Ex. 15, Letter from Jeff D. Marr to Gloria Ralston (Oct. 2, 2013), at USAA-1360 to -1361; Ex. 16, Letter from G Duane Quinn to Jeff D Marr (Oct. 11, 2013), at USAA-1366 to -1368; Ex. 3, Review Documentation Log (Doc. Nos. 159, 170), at USAA-2260, -2262.

28.     On October 16, 2013, USAA CIC was finally allowed to measure, adjust, and estimate the newly-claimed damage based on the Rimkus Report, but was not allowed to ask Plaintiff any questions about the house despite her attendance.  Ex. 17, Letter from G Duane Quinn to Jeff D Marr (Oct. 31, 2013), at USAA-1375 to -1377; Ex. 6, Pl. Dep. 314:7-14 (testifying she was present for the inspection); Ex. 3, Review Documentation Log (Doc. No. 181), at USAA-2264.

29.     The adjuster, Duane Quinn, put his questions in writing and asked that they be answered by Plaintiff.  Ex. 17, Letter from G Duane Quinn to Jeff D Marr (Oct. 31, 2013), at USAA-1375 to -1377.

30.     Plaintiff did not respond.  *See* Ex. 18, Letter from G Duane Quinn to Jeff D Marr (Nov. 15, 2013), at USAA-1512 to -1514; Ex. 3, Review Documentation Log (Doc. Nos. 186-187), at USAA-2264 to -2265.

31.     On November 15, 2013, USAA CIC revised its estimate and made a supplemental payment without the benefit of Plaintiff's answers to outstanding questions. Ex. 19, Quinn Estimate, at USAA-1475- to -1511; Ex. 18, Letter from G Duane Quinn to Jeff D Marr (Nov. 15, 2013), at USAA-1512 to -1514; Ex. 3, Review Documentation Log (Doc. No. 188), at USAA-2265.

32.     In his estimate, Mr. Quinn notes that "[p]er the engineer's report and my own personal observations I do not anticipate there to be any structural damage to the roof framing; however, if tornado related damage is found to the roof structure when the roof sheathing is removed, please contact USAA so we might inspect the supplemental damage and adjust the repair estimate."   Ex. 19, Quinn Estimate, at USAA-1482 (emphasis added).

33.     On January 21-24, 2014, Plaintiff replaced the roof on her property—more than seven months after USAA CIC paid for roof replacement.  Ex. 6, Pl. Dep. 199:19-25; Ex. 8, Check, at USAA-2273; Ex. 5, Bruce Estimate, at USAA-1311 to -1313 (revealing the net claim for Dwelling coverage was $16,052.46 (which represents the

replacement cost value less depreciation and the deductible) and the net claim for Other Structures coverage was $4,998.32, which totals $21,050.78).

34.   Plaintiff admitted USAA CIC never told her to wait to fix the roof and that it was her own decision to wait.  Ex. 6, Pl. Dep. 204:5-15.

35.   USAA CIC was not notified at the time the roof was replaced that there was any additional damage to the roof structure.  Ex. 20, Quinn Dep. 417:2-8.

36.   Mr. Quinn's November 15, 2013 estimate also advised that the coverage for Building Ordinance or Law pays only "the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property."  Ex. 19, Quinn Estimate, at USAA-1482.

37.   Mr. Quinn's estimate included costs to remove and replace all brick veneer on the front, rear, right, and left elevations of the property.  Ex. 19, Quinn Estimate, at USAA-1483 to -1486.

38.   Mr. Quinn advised Plaintiff that USAA CIC was issuing payment for an additional $28,783.51 and that that once he received responses to his questions he would adjust the estimate further, if warranted, and issue another supplemental payment.  Ex. 18, Letter from G Duane Quinn to Jeff D Marr (Nov. 15, 2013), at USAA-1512 to -1514.

**M.   After USAA CIC's supplemental payment, the claim went quiet except for a living expense payment request.**

39.   On February 7, 2014, Plaintiff's counsel faxed a letter advising USAA CIC that Plaintiff's home was being repaired and requesting additional living expenses.  Ex. 2, Letter from Jeff D. Marr to Gloria Ralston (Feb. 7, 2014), at USAA-1517 to -1519.

40.     On February 10, 2014, just three days after receiving the request, USAA CIC issued a check in the amount of $3,000 for living expenses.  Ex. 22, Letter from G Duane Quinn to Jeff D Marr (Feb. 10, 2014), at USAA-1520 to -1521; Ex. 8, Check, at USAA-2276.

41.     Mr. Quinn believed the repairs to Plaintiff's property relating to the tornado could have been accomplished in three months.  Ex. 20, Quinn Dep. 401:25-402:22.

42.     Plaintiff has not requested an additional payment for living expenses.  Ex. 20, Quinn Dep. 403:5-11.

43.     Instead of proceeding with additional repairs that USAA CIC paid for, Plaintiff filed this lawsuit.  *See* Pet. (ECF No. 1-1).

**N.     Plaintiff abandoned her breach of contract claim.**

44.     In response to a discovery request, Plaintiff advised: "Plaintiff has not alleged a breach of contract allegation in her Second Amended Complaint."  Ex. 23, Pl.'s Resps. to Def.'s First Reqs. for Produc. (Request for Production No. 49).

45.     At her deposition on January 22, 2015, Plaintiff testified she was only asserting a bad faith claim against USAA CIC and she had no other complaints against USAA CIC.  *See* Ex. 6, Pl. Dep. 339:4-15.

**O.     Plaintiff knew USAA CIC requested to inspect her home in October 2014, and she altered the property anyway.**

46.     On October 8, 2014, Plaintiff forwarded documents to USAA CIC and asked it to "forward the same to the claims adjuster for review and evaluation."  Ex. 24, Letter from Carole Dulisse to Andrew Morris (Oct. 8, 2014), at USAA-2914 to -2920.

47.     Shortly thereafter, USAA CIC requested permission to inspect Plaintiff's house.  Ex. 25, Letter from Andrew J. Morris to Jeff D. Marr et al. (Oct. 14, 2014), at USAA-2922 to -2925.

48.     Plaintiff was aware that USAA CIC had requested to inspect the property in October 2014.  Ex. 6, Pl. Dep. 146:3-147:24.

49.     USAA CIC was not allowed access to Plaintiff's property until January 23, 2015.  Ex. 20, Quinn Dep. 230:14-23; Ex. 6, Pl. Dep. 329:18-20.

50.     From October 2014 to January 2015, Plaintiff made various alterations to the property.  *See* Ex. 2, James Elder Dep. 146:11-150:15 (repair of stem wall in November-December 2014); *id.* at 169:9-170:1 (electrical replacement in November-December 2014); Ex. 26, Clint Daily Dep. 129:9-130:2 (cabinet and sheetrock replacement about October 2014); *id.* at 138:25-139:18 (bathroom replacement in November-December 2014); *id.* at 179:9-180:25 (garage door reframing in December 2014).

51.     Before USAA CIC's January 2015 inspection, Plaintiff gutted the house to the wall studs and removed the brick veneer.  *See, e.g.*, Ex. 27, Pl. Photographs, at DAILY 226, 276, 305, 381; *see also* Ex. 6, Pl. Dep. 321:22-23, 323:7-17.

52.     USAA CIC was also prevented from observing any of the wiring after Plaintiff claimed it needed to be replaced.  Ex. 20, Quinn Dep. 238:20-22 ("I don't know who did it, but we did not have the opportunity to inspect the wiring after [Plaintiff] said it needed to be replaced.").

**P.      USAA CIC has paid Plaintiff more than $50,000.00 on her claim.**

53.      One day after her claim was reported, USAA CIC paid Plaintiff $500 for food spoilage.  Ex. 28, Letter from USAA to Justine B Daily (May 22, 2013), at USAA-413; Ex. 3, Review Documentation Log (Doc. No. 16), at USAA-2232.

54.      On June 14, 2013, USAA CIC issued a check for $21,050.78, representing payment under Dwelling and Other Structures coverages, less depreciation and the deductible.  *Compare* Ex. 8, Check, at USAA-2273 (showing total payment under Dwelling and Other Structures coverage of $21,050.78), *with* Ex. 5, Bruce Estimate, at USAA-1311 to -1313 (revealing the net claim for Dwelling coverage was $16,052.46 (which represents the replacement cost value less depreciation and the deductible) and the net claim for Other Structures coverage was $4,998.32, which totals $21,050.78).

55.      Also on June 14, 2013, USAA CIC issued a check in the amount of $597.44, representing payment under Personal Property coverage.  *Compare* Ex. 8, Check, at USAA-2274, *with* Ex. 5, Bruce Estimate, at USAA-1315.

56.      On November 15, 2013, USAA CIC issued a check in the amount of $28,783.51, representing a supplemental payment under the Dwelling, Personal Property and Other Structures Coverages per Mr. Quinn's estimate.  *Compare* Ex. 8, Check, at USAA-2275, *with* Ex. 19, Quinn Estimate, at USAA-1476 to -1480 (showing net claim remaining for Dwelling coverage was $28,129.56, net claim remaining for Other Structures coverage was $21.02, and net claim remaining for Personal Property was $632.93, which totals $28,783.51).

Based on these undisputed facts and the law, USAA CIC respectfully submits it is entitled to summary judgment on both of Plaintiff's claims.

## STANDARD OF REVIEW

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only facts that affect the disposition of the substantive claim are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is also appropriate if the evidence is so one-sided that one party must prevail. *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1179 (10th Cir. 2007).

"[T]he summary judgment movant . . . need only point to a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.  The burden then shifts to the nonmovant to . . . set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*, No. CIV-11-594-D, 2012 WL 3595093, at *1 (W.D. Okla. Aug. 21, 2012) (citation and quotation marks omitted).

## ARGUMENTS & AUTHORITIES

**Q.     USAA CIC is entitled to summary judgment on Plaintiff's bad faith claim.**

To establish a violation of the duty of good faith and fair dealing in Oklahoma, the plaintiff must prove: (1) the insurer had no reasonable basis for delaying or denying payment; (2) the insurer did not deal fairly and in good faith with the claimant; (3) the claimant was entitled to coverage under the policy; and (4) the insurer's violation of the

duty of good faith was a direct cause of the injury. *Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*, No. CIV-11-594-D, 2012 WL 3595093, at \*7 (W.D. Okla. Aug. 12, 2012) (citing Oklahoma Uniform Jury Instructions-Civil (2d), No. 22.2; *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009)). "The absence of any one of these elements defeats a bad faith claim." *Ball*, 221 P.3d at 724. Because Plaintiff here fails on all elements, summary judgment for USAA CIC is proper.

### A. Plaintiff cannot show USAA CIC unreasonably delayed or denied payment of undisputed amounts due to Plaintiff.

#### 1. USAA CIC timely paid amounts due under the Policy.

Plaintiff's chief and repeated complaint is that USAA CIC acted in bad faith by "fail[ing] to pay for the undisputed damage to Plaintiff's roof, which was still in disrepair due to USAA's delay in its investigation." Third Am. Compl. ¶ 16(e) (ECF No. 39) (referencing damage as of July 15, 2013). Plaintiff mentions the word "roof" in her complaint at least ten times, and attributes USAA CIC's purported delay in payment of the roof to additional damages. *See id.* ¶ 16(n) (alleging USAA CIC "admittedly and unreasonably withheld payment for replacement of Plaintiff's roof for no just reason or cause [which] . . . . was the direct result [of] additional damage to Plaintiff's home"). Plaintiff ties the additional damages to  USAA CIC's purported failure to pay for the roof. *See id.* ¶ 16(e) (roof causing "additional water damage"); *id.* ¶ 16(g) (attributing standing water in attic and water damage to son's room and mold "because USAA [CIC] will not pay the undisputed claim").

These allegations are false.  USAA CIC paid Plaintiff to replace her roof on June 14, 2013.  UMF Nos. 14-15.  The only reason USAA CIC waited until then was because Plaintiff's mother requested this based on Plaintiff's instruction.   UMF Nos. 12-13.  USAA CIC cannot have committed bad faith—or be charged with all these claimed causally-related and additional damages—for failing to pay for "undisputed damage to Plaintiff's roof" when USAA CIC previously paid Plaintiff to replace her roof.  Even Plaintiff concedes USAA CIC never told her to wait to delay fixing her roof and that it was her decision to wait.  UMF No. 34.  Given Plaintiff's claimed causal connection between the roof and claimed additional damages she, this eliminates the vast majority of Plaintiff's complaints.

Plaintiff's other complaints are similarly unsupported.  Plaintiff claims that USAA CIC acted in bad faith by "failing to timely pay all coverages due and owing to Plaintiff . . . including . . . [d]ebris [r]emoval, [p]ersonal [p]roperty, and local code enforcement provisions."  Third Am. Compl. ¶ 16(q).  But like the roof, USAA CIC actually paid Plaintiff for both debris removal and personal property.  UMF Nos. 14-15.  Again, USAA CIC cannot have acted in bad faith by failing to pay for things that it paid for.

As to municipal code requirements, the Policy provides that before USAA CIC will pay "[f]or loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection" the increased costs must be "required" and "actually incur[red] to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property."  *See* Ex. 1, Policy § 14, at USAA-354.  Plaintiff has not clained any of the requirements of this provision: loss

17

caused by a covered loss, increased costs required by law, and actually incurred.  Indeed, her allegations undermine application of this provision, as she does not claim any damages were caused by a covered loss; rather she claims the additional damages were caused by a failure to timely pay for the roof, which has been established as false.  *See, e.g.*, Third Am. Compl. ¶¶ 16(e), (g), (n).

Moreover, Plaintiff cannot show that any increased costs were required by any city code.  Plaintiff claims USAA CIC failed to "tender any payment or coverage for the mandatory replacement of the wiring of Plaintiff's home" as required the City of Moore's July 2013 building code amendments.  Third Am. Compl. ¶ 16(m).  However, the only relevant changes to the city building code in July 2013 dealt with (1) the minimum square footage for a residence, (2) a requirement that 50% of a residence's exterior include brick, and (3) a requirement for an attached garage.  *See* Ex. 29, Minutes of the Moore City Council 4-5 (July 1, 2013) (Agenda Item No. 6).  None of these requirements are applicable to Plaintiff's property (*i.e.*, her house is already over 1,000 square feet, USAA CIC paid for the brick veneer which covers more than 50% of the exterior, and the residence already has an attached garage). Thus, even assuming a covered cause of loss and that these costs were actually incurred, USAA CIC not paying additional amounts to meet these already-met requirements cannot be bad faith.   Contrary to Plaintiff's allegations, there are no requirements regarding wet wiring in this amendment; nor were any other actions taken regarding electrical wiring in July 2013.  Without evidence that the code provision applies, USAA CIC is not responsible for payments and therefore

cannot have wrongfully withheld payments.  *See Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 16, 998 P.2d 1219, 1223.

### 2.   USAA CIC conducted reasonable investigations.

Plaintiff must disregard the evidence to contend that USAA CIC failed to conduct an adequate investigation.  Each and every time USAA CIC was faced with a claim o complaint by Plaintiff, USAA CIC promptly responded and investigated the loss for payment.  *See, e.g.*, UMF Nos. 8-9 (Josh Bruce inspected within eight days of notice, and payment made less than a month after the storm); UMF Nos. 16-18 (an independent adjuster and a structural engineer both inspecting the home within twenty days of complaint by Plaintiff of additional damages); UMF No. 46 (showing Plaintiff's counsel sending documents in litigation for claim adjuster and USAA CIC's counsel promptly asking to inspect the property).  The only times USAA CIC could not do this was when Plaintiff refused to cooperate.  *See* UMF Nos. 47-49.

Plaintiff's allegation that USAA CIC missed evidence at the outset rests on a theory that USAA CIC was required to be perfect on the first inspection.  Under Plaintiff's theory, USAA CIC had one shot.  This is a misconstruction of reality.  It is not unusual to need reinspections in this context, and the fact that a reinspection and supplemental payment (or multiple reinspections and supplemental payments) occurs is not evidence of bad faith.  *See Errahmouni v. Progressive N. Ins. Co.*, No. CIV-12-1380-HE, 2013 WL 6410985, at *4 (W.D. Okla. Dec. 9, 2013) (explaining insurers are not held to perfection).  Indeed, if a refusal by an insurer to conduct a reinspection is not evidence of bad faith under certain circumstances, then the opposite is most certainly not true. *Cf.*

*Lopez v. Farmers Ins. Co.*, No. CIV-10-0584-HE, 2011 WL 1807158, at *3 (W.D. Okla. May 6, 2011) (even an insurer's refusal to conduct a reinspection has been considered insufficient to support a claim for bad faith).

### 3.    USAA CIC's reliance on an independent engineer to assess structural damage was reasonable.

Plaintiff contends it was bad faith for USAA CIC to rely on an independent engineer it hired and paid for because that engineer was biased and did not consider Plaintiff's concerns.  This complaint lacks evidence and merit.

As this Court has already determined and as judges in the Western District of Oklahoma have repeatedly recognized, "relying on [an] expert[ the insurer] selected" is not evidence of bad faith.  Ex. 30, Order of Mar. 3, 2015, at 1-2, *Wellman v. USAA Gen. Indem. Co.*, No. 5:14-cv-550-HE (W.D. Okla.) (citing *LeBlanc v. Travelers Home & Marine Ins. Co.*, No. CIV-10-503-HE, 2011 WL 2748616, at *3 (W.D. Okla. July 13, 2011); *Hartsfield v. Farmers Ins. Co.*, No. CIV-10-585-C, 2011 WL 2680840, at *3 (W.D. Okla. July 8, 2011)).

Additionally, there is no evidence of a sham or orchestrated investigation by USAA CIC.  As matter of law, using engineers who are approved vendors by USAA CIC is not bad faith.  *See, e.g.*, *JT Carneal v. Travelers Ins. of Am.*, No. 5:12-CV-00174, 2013 WL 5945071 (W.D. Ky. Nov. 5, 2013) (finding, where plaintiff submitted evidence that the insurer's engineer had been hired by the insurer to perform "74 jobs in 2010 at $800.00 on average [and] 69 jobs in 2011 at $800.00 on average" which plaintiff argued showed the engineer was unfair and partial, these were conclusory statements and there

was no actual evidence of any sort of bad faith conduct sufficient to sustain the bad faith claim, and granting summary judgment); *McNamus v. State Farm Lloyds*, 2004 WL 2533558 (N.D. Tex. Nov. 8, 2004) (proof that an engineer receives large volumes of business is not sufficient to raise a genuine issue of material fact for bad faith).

There also is no evidence that the Rimkus engineer ignored Plaintiff's concerns or that USAA CIC hired Rimkus because its report fit the damages.  This is nonsense.  First, USAA CIC paid for supplemental damages to Plaintiff to entirely remove and replace the brick on her house based on Rimkus's report and recommendations.  *See* Ex. 9, Rimkus Report of Findings; Ex. 11, Rimkus Supplemental Report of Findings.  Thus, the Rimkus Report actually resulted in *additional* payments to Plaintiff.  Second, simply because the Rimkus engineer (who is an expert in the field) disagreed with Plaintiff (who is not) and found that the tornado did not cause damage to the foundation does not mean USAA CIC's reliance on Rimkus was somehow unreasonable or in bad faith.  *See Cole v. Shelter Mut. Ins. Co.*, No. CIV-13-1178-M, 2014 WL 5018591, at *3 (W.D. Okla. Oct. 7, 2014) (granting summary judgment where differing opinions about the damage to the property by the insurer's adjuster and the insured's roofer); *see also See Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904-05 (Okla. 1978) (recognizing it is not bad faith where there are disagreements on such matters as "extent of coverage, cause of loss, amount of loss, or breach of policy conditions").  Like her other allegations, Plaintiff's complaints about the engineer do not advance a bad faith claim.

**B.      Plaintiff cannot satisfy the other elements of her bad faith claim.**

In addition to lacking evidentiary and legal support to suggest USAA CIC unreasonably refused additional payment on this claim, Plaintiff lacks evidence to show that USAA CIC did not deal fairly with Plaintiff, that Plaintiff is entitled to coverage under the policy, and that any breach of the duty of good faith and fair dealing was a direct cause of the injury sustained by Plaintiff.  *Cf. Emmanuel Baptist*, 2012 WL 3595093, at *1 (explaining the movant "need only point to 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim'" and that it is not necessary that the insurer disprove the plaintiff's claim).

No evidence exists that USAA CIC did not deal fairly with Plaintiff.  While Plaintiff raises numerous complaints, these are all trivial, flat-out wrong, or otherwise do not rise to tortious conduct adequate to advance a bad faith claim to a jury.[2]  Plaintiff has tried to pick apart the claim process, and level unfounded criticisms at everything USAA CIC has done that arguably fell short of perfection.  This is little more than *ad hominem*.

For Plaintiff's johnny-come-lately, post-litigation requests that USAA CIC evaluate additional damages to the house, it cannot be bad faith, as a matter of law, for USAA CIC to request to see the property and view the additional damages and that Plaintiff cooperate with its insurer and provide access to the property.  *Cf.  Evans*, 2015

---

[2] Although not pleaded by Plaintiff, she may in her response contend she was not paid piecemeal to replace her air conditioning unit which was estimated by an adjuster on June 27, 2013, though her adjustment was pending the Rimkus inspection of her claimed foundation and cracking damages.  By that point, however, Plaintiff had already been paid $930.15 to cover air conditioning damages caused by the storm (more than the ACV amount estimated on June 27, 2013 by second adjuster).  This potential criticism certainly does not constitute the tortious conduct required for bad faith.

WL 1650192, at *8 ("It cannot be unreasonable to require an insured to abide by the terms of the policy and provide information about the claim . . . ."). Plaintiff failed to do this, instead altering the property during the time in which she knew USAA CIC's request for inspection was pending. UMF Nos. 48-50. This is not bad faith.

## II.     USAA CIC is entitled to summary judgment on Plaintiff's breach of contract claim.

Plaintiff has abandoned her breach of contract claim through her sworn testimony, and she also is precluded from claiming that USAA CIC breached the insurance contract, due to her own breach. In addition, Plaintiff wrongly and intentionally altered the key piece of evidence in this case, preventing USAA CIC from access to it to investigate Plaintiff's post-litigation claim for additional damages and from defending itself.

### D.     Plaintiff abandoned her breach of contract claim.

Plaintiff abandoned her claim for breach of contract by omitting it from her Second Amended Complaint. Furthermore, during her deposition on January 22, 2015, Plaintiff admitted she had nothing to add beyond her bad faith claims. UMF No. 45. Plaintiff's testimony is clear:

> Q.     You assert only a bad faith claim against USAA. No breach of contract claim. . . . [I]s that all of your complaints about USAA?
> A.     Yes.

Ex. 6, Pl. Dep. 339:4-15.

A claim omitted from a subsequent amended pleading is abandoned. *Cf. Enderwood v. Sinclair Broad. Grp., Inc.*, 233 F. App'x 793, 800 (10th Cir. 2007); *Davis*

*v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991).[3]  Plaintiff was obviously aware of the possibility of recovery under a contract theory because she included it in her original complaint.  *See* Pet. (ECF No. 1-1).   Yet Plaintiff voluntarily abandoned it, omitting it from her Second Amended Complaint.

Plaintiff affirmed her abandonment during her deposition, admitting her only complaint was bad faith.  UMF No. 45.  *Cf. Scrutchins v. Div. of Youth & Family Servs.,* No. 5-925 (CRS), 2008 WL 474103, at *2 n.1 (D.N.J. Feb. 15, 2008) (deposition testimony waiving claim precluded raising claim in subsequent pleading).  Likewise, in response to USAA CIC's request for documents supporting her contract claim, Plaintiff responded: "Plaintiff has not alleged a breach of contract allegation in her Second Amended Complaint.  Therefore, [she] has no documents responsive to this request.  Ex. 23, Pl.'s Resps. to Def.'s First Reqs. for Produc. (Request for Production No. 49).

After Plaintiff's deposition, the Court denied USAA CIC's second motion to dismiss, allowing Plaintiff to reassert the abandoned breach of contact claim by February 14, 2015—after her January 22, 2015 deposition.  *See* Order of Feb. 4, 2015, at 3 (ECF No. 38).  Plaintiff did just that, including a breach of contract claim in her (now-current) Third Amended Complaint.  *See* Third Am. Coml. (ECF No. 39).

However, Plaintiff did not—despite having an opportunity until at least February 22, 2015, to do so—amend her deposition testimony.  *See* Fed. R. Civ. P. 30(e) (allowing a witness 30 days to change deposition testimony after the transcript's completion); Ex.

---

[3] In this circumstance, Plaintiff's abandonment of her claim constitues waiver, which is an intentional abandonment of a known right or privilege.  *See United States v. Vann*, 776 F.3d 746, 763 (10th Cir. 2015).

31, Letter from Holly Schmitz to Jodi Dishman (Mar. 9, 2015).  Nor did Plaintiff amend her response to USAA CIC's request for production, despite amending responses to other discovery requests in April 2015, well after she filed her Third Amended Complaint and attempted to re-assert her abandoned claim.  Thus, Plaintiff's deposition testimony and discovery response stand, constituting abandonment of her contract claim.  *Cf. Scrutchins*, 2008 WL 474103, at *2 n.1.

The Court can find Plaintiff's breach of contract claim abandoned without disturbing its earlier ruling (ECF No. 38) because the Court has additional information available now.  Previously, the Court was considering only Plaintiff's pleadings and the parties' motion-to-dismiss briefing.  Now, the Court may also consider Plaintiff's sworn and unaltered testimony and her discovery response.  Plaintiff has abandoned her breach of contract claim.

### E.      Plaintiff cannot assert a contract claim because she failed to cooperate with USAA CIC in its investigative efforts.

Plaintiff cannot prove a breach because she failed to meet her contractual cooperation obligations under the Policy.[4]  "An insured . . . has an obligation to cooperate with [her] insurer, which is both contractual and implied in law.  *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 304 (Okla. 1996).  The Tenth Circuit

---

[4] Failure of Plaintiff's contract claim also results in the failure of her bad faith claim.  *See Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1123 n.8 (10th Cir. 2012) (recognizing breach of contract as "one element the jury needed to find in determining [an insurer is] liable for the tort of bad faith"); *Davis v. GHS Health Maint. Org., Inc.*, 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210 ("[A] determination of liability under the contract is a prerequisite to recovery for bad faith breach of an insurance contract."); *cf. Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1249 (10th Cir. 2010).

recently addressed this issue in *Bryant v. Sagamore Insurance Co.*, 597 F. App'x 968 (10th Cir. 2015) (unpublished).   In *Bryant*, the district court granted summary judgment on a breach of contract claim for an automotive insurance policy.   *See id.* at 971-72.   The Tenth Circuit affirmed because the policy included a cooperation clause that the insured failed to meet.   *Id.* at 972-74.   Because the insured failed to cooperate, there was no breach of the contract.   *Id.* at 973.   That the insured may have initially cooperated was immaterial because he later stopped cooperating.   *Id.* at 972.

This case is similar.   Plaintiff's Policy included a cooperation requirement (*see* UMF No. 2), in addition to the cooperation requirement implied by law.   *See First Bank of Turley*, 928 P.2d at 304.   Although Plaintiff initially cooperated with USAA CIC, Plaintiff's cooperation stalled and eventually ceased by August 2013.   USAA CIC tried for months to schedule an appointment with Plaintiff to write a full estimate so USAA CIC could release additional funds to Plaintiff.   UMF Nos. 26-28.   However, USAA CIC was not allowed access to the property until October 16, 2013.   UMF No. 28.   Even at that point, the adjuster was not allowed to ask questions of Plaintiff to determine a full payment amount.   UMF No. 28.   Instead, the adjuster was required to submit questions in writing to Plaintiff's counsel which still have not been answered.   UMF Nos. 29-30.[5]

Prohibiting USAA CIC from accessing the property for months and refusing to supply basic factual information to USAA CIC is a violation of Plaintiff's contractual obligation, which is a predicate to her filing suit.   Plaintiff seeks to transmute her non-

---

[5] This non-cooperation continued in litigation: Plaintiff requested that USAA CIC "forward [documents] to the claims adjuster for review," but refused to provide the Ramseyer Report mentioned therein to USAA CIC for two months.

cooperation into a breach by USAA CIC, but it is not a breach of contract for an insurer to refuse to pay more on a claim where the Plaintiff fails to cooperate.  *See Bryant*, 597 F. App'x at 974.   *Bryant* determined that the "evidence demonstrates [Plaintiff's] policy required [her] to cooperate with [USAA CIC's] investigation and [s]he failed to do so; thus, [USAA CIC] did not breach the contract by denying coverage on this basis . . . ." *Id.* The same result is appropriate here.

### F.    Plaintiff's irreparable spoliation necessitates dismissal.

Plaintiff's non-cooperation goes beyond her refusal to provide information or allow USAA CIC access to the property pursuant to her contractual obligations  and the common law.  Rather, Plaintiff spoliated evidence in violation of her preservation duty and federal discovery rules.  Plaintiff completely and irreparably altered the house—stripping it to the studs and reconstructing it—before USAA CIC's expert witnesses were allowed to view the evidence.  This is not only a violation of her contractual cooperation obligation; it is also an independent basis for dismissal..

"'Spoliation' is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in a pending or reasonably foreseeable litigation.'"  *Chapman v. BOK Fin. Corp.*, No. 12-CV-613-GKF-PJ, 2014 WL 3548844, at *2 (N.D. Okla. July 17, 2014) (quoting *Oldenkamp v. United Am. Ins. Co.*, No. 07-CV-601-TCK-PJC, 2008 WL 4682226, at *2 (N.D. Okla. Oct. 21, 2008)).   Spoliation sanctions are imposed when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was

prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quotation omitted).

The Court has the inherent power to fashion an appropriate remedy for spoliation. *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 862 (10th Cir. 2005). Summary judgment is one such remedy. *See Yoder v. Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014) ("A district court may impose many different kinds of sanctions for spoliated evidence, including dismissing a case[ or] granting summary judgment . . . ." (quotation omitted)).[6]

The duty to preserve evidence begins when "'a party . . . knew, or should have known, that litigation was imminent.'" *Turner*, 563 F.3d at 1149 (quoting *Burlington N. & Santa Fe Ry. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)). Certainly, this duty extends into litigation. There is no doubt Plaintiff knew or should have known of her preservation duty (if for no other reason than she was already represented by counsel when the destruction occurred), and altered her residence anyway. USAA CIC served a Rule 34 inspection request on Plaintiff on October 14, 2014. UMF No. 47. Plaintiff conceded she was aware of USAA CIC's inspection request. UMF No. 48. However, she still altered the property, prejudicing USAA CIC's ability to observe the property in

---

[6] Presumably, bad faith is required for summary judgment. *See Turner*, 563 F.3d at 1149 (requiring bad faith for the lesser sanction of an adverse-inference instruction); *cf. Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (implying culpability is required for a Rule 37 sanction). The Tenth Circuit has not indicated whether bad faith is required for summary judgment due to spoliation. To the extent bad faith is required, it is clear given Plaintiff's awareness of USAA CIC's request for access and her subsequent destruction of the property.

its pre-repair state and to respond to Plaintiff's post-litigation attempt at getting USAA CIC to continue to adjust her claim.  UMF Nos. 49-52.[7]

Instead, Plaintiff spoliated her property despite the fact that USAA CIC had asked to evaluate both the property and the causation of claimed damages.  The alterations by Plaintiff are not slight.  Instead, Plaintiff fully gutted her property to the wall studs, then reconstructed portions before USAA CIC was allowed to view the property.  UMF Nos. 50-52.  The demolition and rebuilding that occurred during this time included at least stem wall repair, electrical replacement, cabinet and sheetrock replacement, bathroom remodeling, and garage door reframing.  UMF Nos. 50-52.  USAA CIC was precluded from viewing the property or performing tests when the property was in its pre-repair state, and, as a result, USAA CIC's experts are forced to do their best to determine causation and other issues upon which they will present expert opinions without the benefit of a pre-renovation house.  This destruction of evidence also prevented USAA CIC's adjuster from evaluating Plaintiff's claimed damage that she requested he inspect. UMF No. 52.

Even Plaintiff's own purported engineering expert recognized the negative effects of Plaintiff's actions, indicating that the house's destruction meant "there wasn't anything worth looking at" and that the residence's alterations resulted in a "tremendous disadvantage."  Ex. 32, Zahl Dep. 10:5-9, 42:10-14, Mar. 6, 2015.  This severely prejudices USAA CIC in its ability to mount its defense to Plaintiff's claims.

---

[7] USAA CIC spent much of the time when repairs occurred requesting property access.  *See* USAA CIC's Motion to Compel Property Inspection (ECF No. 33) (setting forth USAA CIC's repeated efforts to obtain property access).

Plaintiff's wrongful destruction of evidence prevented USAA CIC from even observing the electrical wiring.   UMF No. 52.   USAA CIC was never given *any* opportunity to inspect the wiring that Plaintiff ripped out and threw away to determine if (1) it needed to be replaced, (2) any damage to it was caused by the storm, or (3) its replacement qualified for coverage under the Policy's building code provision.  *Id.*.

Because of the egregious nature and timing of Plaintiff's spoliation, as well as Plaintiff's abandonment of her claim and failure to abide by her obligations under the Policy, USAA CIC requests the Court grant it summary judgment on Plaintiff's claims.

## III.   There is no basis for Plaintiff to recover punitive damages.

"The availability of a punitive damage award in a bad-faith case is not automatic, but rather is governed by the standard applicable in other tort cases."  *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1115 (Okla. 1991).  Because Plaintiff's bad faith claim fails, her punitive damages claim falls too.  Even if it does not, Plaintiff cannot make the requisite showing of malice, intentional wrongdoing or reckless disregard to submit the issue to the jury.  *See* Okla. Stat. tit. 23, § 9.1.  Summary judgment is proper on punitive damages.

<u>CONCLUSION</u>

USAA CIC respectfully requests summary judgment on both of Plaintiff's claims.

Respectfully submitted,

*s/ Andrew J. Morris*
William S. Leach, OBA # 14892
Jodi W. Dishman, OBA # 20677
Andrew J. Morris, OBA # 31658
McAfee & Taft A Professional Corporation
211 North Robinson, 10th Floor
Oklahoma City, OK 73102
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439
E-mail:    bill.leach@mcafeetaft.com
              jodi.dishman@mcafeetaft.com
              andrew.morris@mcafeetaft.com

ATTORNEYS FOR DEFENDANT USAA CIC
CASUALTY INSURANCE COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of May, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Michael Burrage
Carole Dulisse
Jeff D. Marr
J. Revell Parrish
Reggie N. Whitten

ATTORNEYS FOR PLAINTIFF


*s/ Andrew J. Morris*
Andrew J. Morris